**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**DISH NETWORK L.L.C.** and **NAGRASTAR LLC**,

Plaintiffs,

v.

**DEBRA HENDERSON, JOHN HENDERSON**, and **BOOM MEDIA LLC**,

Defendants.

Case No. 5:19-CV-1310 MAD/ATB

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

HAGAN NOLL & BOYLE, LLC
Timothy M. Frank (*pro hac vice*)
Texas Bar #24050624
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile:(713) 758-0146
timothy.frank@hnbllc.com

COUGHLIN & GERHART, LLP
Robert R. Jones (Attorney Bar No. 301236)
99 Corporate Drive
Binghamton, NY 13904
Telephone: (607) 723-9511
Facsimile: (607) 723-1530
rjones@cglawoffices.com

Attorneys for Plaintiffs DISH Network L.L.C. and NagraStar LLC

# TABLE OF CONTENTS

I. FACTS ..... 1

A. Plaintiffs Deliver Encrypted Satellite Broadcasts Of Television Programming ..... 1

B. Defendants Participate In A Scheme To Rebroadcast DISH Programming ..... 1

II. ARGUMENT ..... 3

A. Plaintiffs Should Be Awarded A Default Judgment Against Defendants ..... 3

B. Plaintiffs Should Be Awarded Statutory Damages Against Defendants ..... 6

C. Plaintiffs Should Be Awarded A Permanent Injunction Against Defendants ..... 11

1. Plaintiffs Are Irreparably Harmed And Have No Adequate Remedy At Law ..... 11

2. The Balance Of Hardships And Public Interest Favor An Injunction ..... 13

III. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Harvey Family Chiropractic*,

677 F. App'x 716 (2d Cir. 2017) ....................11

*Au Bon Pain Corp. v. Artect, Inc.*,

653 F.2d 61 (2d Cir.1981) ....................8

*Blizzard Entm't, Inc. v. Reeves*,

2010 WL 4054095 (C.D. Cal. Aug. 10, 2010) ....................8

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*,

779 F.3d 182 (2d Cir. 2015) ....................3

*DISH Network L.L.C. v. DelVecchio*,

831 F. Supp. 2d 595 (W.D.N.Y. 2011) .................... 13-14

*DISH Network L.L.C. v. Dillion*,

No. 3:12-cv-00157-CAB-KSC (S.D. Cal. Oct. 15, 2012) .................... 9, 12-13

*DISH Network L.L.C. v. Droid Tech. LLC*,

No. 8:19-cv-672-WFJ-AEP (M.D. Fla.) ....................6

*DISH Network L.L.C. v. One Box TV, LLC*,

No. 8:19-cv-2147-T-30SPF (M.D. Fla.) ....................6, 11

*DISH Network L.L.C. v. Ramirez*,

2016 WL 3092184 (N.D. Cal. June 2, 2016) ....................5

*DISH Network L.L.C. v. SET Broadcast LLC*,

No. 8:18-cv-01334-VMC-AAS (M.D. Fla.) ....................6

*DISH Network L.L.C. v. Sonicview USA, Inc.*,

2012 WL 1965279 (S.D. Cal. May 31, 2012) ....................................................................7

*DISH Network L.L.C. v. Ward*,

2010 WL 11507693 (M.D. Fla. Jan. 8, 2010) ....................................................................5

*DISH Network L.L.C. v. Whitcomb*,

No. 3:11-cv-0333 W (RBB) (S.D. Cal. July 18, 2011) .......................................................9

*DISH Network L.L.C. v. World Cable Inc.*,

893 F. Supp. 2d 452 (E.D.N.Y. 2012) ..............................................................................4

*eBay, Inc. v. MercExchange, L.L.C.*,

547 U.S. 388 (2006) .......................................................................................................11

*Fustok v. ContiCommodity Servs.*,

873 F.2d 38 (2d Cir. 1989) ..............................................................................................6

*House v. Kent Worldwide Mach. Works, Inc.*,

359 F. App'x 206 (2d Cir. 2010) ......................................................................................8

*Int'l Cablevision, Inc. v. Sykes*,

997 F.2d 998 (2d Cir. 1993)..............................................................................................4

*Int'l Cablevision, Inc. v. Sykes*,

75 F.3d 123 (2d Cir. 1996) ...........................................................................................4, 7

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,

2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ......................................................................4

*Omega Importing Corp. v. Petri-Kine Camera Co.*,

451 F.2d 1190 (2d Cir.1971) ..........................................................................................12

*Salinger v. Colting*,

607 F.3d 68 (2d Cir. 2010) ....................................................12

*United States Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,

511 F. App'x 81 (2d Cir. 2013) ....................................................13

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,

339 F.3d 101 (2d Cir. 2003) ....................................................11

*WPIX, Inc. v. ivi, Inc.*,

691 F.3d 275 (2d Cir. 2012) .................................................... 11-14

**Statutes**

47 U.S.C. § 605(a) .................................................... 1, 3-6, 14

47 U.S.C. § 605(e)(3)(B)(iii) ....................................................10

47 U.S.C. § 605(e)(3)(B)(i) ....................................................11

47 U.S.C. § 605(e)(3)(C)(i)(II) ....................................................6, 9

47 U.S.C. § 605(e)(4).................................................... 1, 3-7, 9-11, 14

Plaintiffs DISH Network L.L.C. and NagraStar LLC move for default judgment against Defendants Debra Henderson, John Henderson, and Boom Media LLC on Count I and Count II of the complaint alleging violations of the Federal Communications Act, 47 U.S.C. §§ 605(a), (e)(4), based on Defendants' involvement in the operation of illicit streaming services that capture DISH's satellite communications of television programming and then retransmit that DISH programming, without authorization, to customers that purchased the equipment needed to access these services from Defendants (the "Rebroadcasting Scheme").

## I. FACTS

### A. Plaintiffs Deliver Encrypted Satellite Broadcasts Of Television Programming.

DISH is the fourth largest pay-television provider in the U.S. and delivers programming to millions of subscribers nationwide using a direct broadcast satellite system. (Dkt. 1, Compl. ¶¶ 1, 11.) DISH's subscribers have access to hundreds of television channels, including movies, sports programs, and general entertainment services ("DISH Programming"). (*Id.* ¶ 11.) DISH contracts for and purchases the right to broadcast DISH Programming from various rights holders. (*Id.*)

NagraStar provides conditional access security technology that authorizes the subscriber's receipt of DISH Programming. (*Id.* ¶ 12.) DISH Programming is encrypted prior to being uplinked to satellites, and then retransmitted from the satellites to subscribers that (1) purchased from DISH the right to view such programming, and (2) have the equipment necessary to receive and decrypt DISH's satellite communications, including a DISH receiver and NagraStar smart card that convert DISH's encrypted satellite communications into viewable DISH Programming. (*Id.*)

### B. Defendants Participate In A Scheme To Rebroadcast DISH Programming.

Defendants Debra Henderson and John Henderson are a mother and son team that operated the website previously accessible at https://boommedia.org ("Boommedia.org"). (*Id.* ¶¶ 5, 13, 18.)

Mr. Henderson conducted business under the name of Defendant Boom Media LLC, a company that he formed to carry out the Rebroadcasting Scheme and which operated under Mr. Henderson's dominion and control. (*Id.* ¶¶ 6-7, 13, 18.) Mr. Henderson ran Boom Media LLC from his home and, based upon the company records, he is the sole member and sole official of the company. (*Id.* ¶ 7.) Boommedia.org served as the face of the Rebroadcasting Scheme and the means by which Defendants – Debra Henderson and John Henderson, individually and through his alter ego Boom Media LLC – monetized their piracy. (*Id.* ¶¶ 7, 13-15, 17-18.)

*Defendants' Device Codes*

Defendants sold codes at Boommedia.org that enable customers to use their set-top box or other internet-enabled device to access the streaming services known as MFG TV, Beast TV, Nitro TV, Murica Streams, Epic IPTV, Vader Streams, and OK2 (hereinafter, the "Device Codes" and "Services"). (*Id.* ¶ 13.) Defendants touted the availability of sports programming, pay-per-view events, and adult content in describing the Services at Boommedia.org. (*Id.* ¶¶ 14-15.) Defendants also advertised the availability of movie channels including HBO and Showtime, sports networks such as ESPN and Fox Sports, as well as UFC, WWE, and boxing pay-per-view events. (*Id.* ¶ 16.)

Defendants sold Device Codes for approximately $10 to $20 per month of access to the Service selected by the customer. (*Id.* ¶ 17.) Defendants also sold "loaded" or "programmed" set-top boxes for approximately $150, which are set-top boxes sold pre-configured with Device Codes. (*Id.*) Defendant Debra Henderson received payment for the Device Codes and set-top boxes sold from Boommedia.org, while Defendant John Henderson distributed the set-top boxes and Device Codes to those purchasers. (*Id.* ¶ 18.)

*Rebroadcasting of DISH Programming*

DISH Programming was rebroadcast without authorization to users of the Services. (*Id.* ¶¶

13, 16.) The DISH Programming retransmitted on the Services originated from DISH's satellite communications, as established by Plaintiffs' testing of the Services. (*Id.* ¶ 16.) The analysis was conducted by inserting encoded messages into DISH's satellite communications and then viewing channels on the Services to detect the encoded messages, thus confirming the DISH Programming originated from DISH's satellite communications. (*Id.*)

Plaintiffs did not authorize the rebroadcasting of DISH Programming on the Services. (*Id.* ¶ 13.) Defendants claim to control the programming offered on the Services, stating "[w]e reserve the right to control content" and "[w]e may add or remove channels at any time." (*Id.* ¶ 19.) Also, Plaintiffs did not authorize Defendants to distribute Device Codes that enabled their customers to receive DISH Programming without paying a subscription fee to DISH. (*Id.* ¶¶ 13, 22, 26.)

## II. ARGUMENT

### A. Plaintiffs Should Be Awarded A Default Judgment Against Defendants.

The Court may enter default judgment against Defendants because they were each properly served with Plaintiffs' summons and complaint, Defendants failed to plead or defend the case, the Clerk entered default against Defendants, and Defendants are not minors, incompetent, or exempt under the Servicemembers' Civil Relief Act. (Frank Decl. ¶¶ 2-13, Exs. 1-4.) Thus, the procedural requirements for default judgment in L.R. 55.2(b) are satisfied.

Further, the well-pleaded allegations of fact in Plaintiffs' complaint, which are accepted as true because of Defendants' default, state a claim for relief. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("[T]he court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."). Plaintiffs sufficiently plead Defendants' violations of the Federal Communications Act, 47 U.S.C. §§ 605(a), (e)(4) ("FCA"),

in Counts I and II of the complaint.

Section 605(a) states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a) (quoting third sentence). Section 605(e)(4) makes it unlawful to distribute "any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of … direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)." *Id.* § 605(e)(4).

A satellite transmission is a "communication by radio" subject to the protections of section 605(a). *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007-08 (2d Cir. 1993). Rebroadcasting television programming that originates from a satellite transmission – including rebroadcasting via cable or the internet – is actionable under section 605(a). *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132 (2d Cir. 1996) (applying section 605(a) to retransmission of satellite communication through cable); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 696126, at *7 (S.D.N.Y. Feb. 15, 2017) (finding third sentence of section 605(a) applies to "retransmission of a signal that originated as a satellite transmission, even when it is thereafter received or transmitted over the internet"); *DISH Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 473 (E.D.N.Y. 2012) (allowing DISH to bring claim under third sentence of section 605(a) based on internet retransmission of DISH's satellite television programming and under section 605(e)(4) based on sale of products used to access these internet retransmissions).

Defendants violated section 605(a) through their operation of the Rebroadcasting Scheme. Defendants retransmitted DISH Programming originating from DISH's satellite communications to customers of the Services, or worked closely with others to do so. (Compl. ¶¶ 13, 16, 19 [citing

statements on Defendants' website evidencing their control over the channels].)  Defendants also sold the Device Codes required to access DISH Programming on the Services.  (*Id.* ¶¶ 13, 17-18.)  Defendants' actions assisted their customers to receive DISH Programming without authorization, which benefitted Defendants in the form of Device Code revenues and benefitted their customers by allowing them to avoid paying the required subscription fee to DISH.  (*Id.* ¶¶ 11-13, 17-18, 22.)  Defendants therefore violated section 605(a), as pleaded in Count I.  (*Id.* ¶¶ 21-24.)

Defendants' sale of Device Codes also violates section 605(e)(4) (Count II), which makes it unlawful to distribute "any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of … direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)."  The Device Codes, which Defendants sold individually and pre-loaded onto a set-top box, were designed and produced for purposes of allowing access to the servers that support the Services, and thus are a "device" or "equipment" for the purpose of section 605(e)(4). (Compl. ¶ 13).  *See DISH Network L.L.C. v. Ward*, No. 8:08-cv-590-T-30TBM, 2010 WL 11507693, at *6 (M.D. Fla. Jan. 8, 2010) (identifying plain meaning of "device" and "equipment" as "things" with a particular purpose, and holding software is a device or equipment under section 605(e)(4)); *DISH Network L.L.C. v. Ramirez*, No. 15-cv-04712-BLF, 2016 WL 3092184, at *3-4 (N.D. Cal. June 2, 2016) (applying section 605(e)(4) to piracy-enabling access codes).

Defendants violated section 605(e)(4) because their Device Codes are intended for use in activity prohibited under section 605(a) – receiving DISH Programming without authorization and without making proper payment to DISH.  (Compl. ¶ 26.)  Defendants acknowledge their Device Codes provide access to premium television programming that comes from "pirated streams" and thus constitutes "black market" content.  (*Id.* ¶¶ 14-15, 20.)

Therefore, Plaintiffs adequately plead claims for relief based upon Defendants' violations of sections 605(a) and 605(e)(4) of the FCA. *See DISH Network L.L.C. v. One Box TV, LLC*, No. 8:19-cv-2147-T-30SPF, Dkt. 17 (M.D. Fla.) (entering default judgment for Plaintiffs and finding complaint sufficiently stated violations of sections 605(a) and (e)(4) based upon similar scheme to retransmit DISH programming and profit from the sale of codes used to access a streaming service carrying that DISH programming); *DISH Network L.L.C. v. Droid Tech. LLC*, No. 8:19-cv-672-WFJ-AEP, Dkts. 7, 21 (M.D. Fla.) (granting TRO and preliminary injunction and finding Plaintiffs had a likelihood of success on their section 605(a) and (e)(4) claims based on similar facts); *DISH Network L.L.C. v. SET Broadcast LLC*, No. 8:18-cv-01334-VMC-AAS, Dkts. 15, 63 (M.D. Fla.) (same) (attached to McMonnies declaration as Exhibits 14-16).

**B. Plaintiffs Should Be Awarded Statutory Damages Against Defendants.**

Statutory damages for violations of section 605(e)(4) may be awarded in an amount ranging from $10,000 to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Statutory damages of $1,000 to $10,000 may be awarded for each violation of section 605(a), subject to an increase of not more than $100,000 per violation if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* § 605(e)(3)(C)(i)(II), (ii). Such damages may be awarded without a conducting a hearing if the affidavits and documentary evidence provide a sufficient basis for the damages requested. *Fustok v. ContiCommodity Servs.*, 873 F.2d 38, 40 (2d Cir. 1989).

Plaintiffs request statutory damages of $1,000 for each of Defendants' violations of section 605(e)(4) –significantly less than the $10,000 to $100,000 per violation range authorized by the statute. 47 U.S.C. § 605(e)(3)(C)(i)(II). Each Device Code distributed by Defendants constitutes a separate violation of section 605(e)(4). *See id.* § 605(e)(4) ("[T]he prohibited activity established

herein as it applies to each such device shall be deemed a separate violation."); *see also Sykes*, 75 F.3d at 133 ("A violation of § 605(e)(4) occurs upon the distribution of a descrambler … ."); *DISH Network L.L.C. v. Sonicview USA, Inc.*, No. 09-cv-1553-L(WVG), 2012 WL 1965279, at *13 (S.D. Cal. May 31, 2012) ("Section 605(e)(4) is violated by each distribution of a piracy device.").

Due to Defendants' default and failure to participate in this case, Plaintiffs do not have the benefit of discovery identifying the exact number of Device Codes that Defendants sold. However, statements made by Defendant John Henderson evidence at least some of these Device Code sales. Defendant John Henderson appears in videos posted to Boom Media's YouTube channel, wherein he conducts Q&A sessions with customers regarding the Services. (McMonnies Decl. ¶ 12, Exs. 8-9.)

A video titled "Call To Action …" was added to Boom Media's YouTube Channel on June 3, 2019. (*Id.* ¶ 13, Exs 10-11.) There, Mr. Henderson states that a credit card processor Defendants used from February 2019 through early May 2019 refused to release $50,000 owed to Defendants for Device Codes that Defendants sold to customers. (*Id.*) As a form of retaliation, Mr. Henderson urges Defendants' customers to initiate a charge back with their credit card issuer so that payments would be recouped from the credit card processor withholding the $50,000 from Defendants. (*Id.*) Mr. Henderson makes clear the customers will keep the Device Codes purchased from Defendants, but instructs the customers to falsely inform their credit card issuers otherwise in order to effectuate the charge backs and get revenge on the credit card processor. (*Id.*)

Defendants sold Device Codes for $15 each on average. (McMonnies Decl. ¶ 9, Exs. 4-6; *see* Jaczewski Decl. ¶ 8, Ex. 1; Arguello Decl. ¶¶ 4-7, 9, Exs. 1-3.) Accordingly, Mr. Henderson's statement that Defendants were waiting for $50,000 in payments owed to them for Device Codes previously distributed to customers is evidence of 3,333 Device Codes sold by Defendants. *See*

*House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (finding that for purposes of awarding damages at default judgment, plaintiffs "are entitled to all reasonable inferences from the evidence they presented") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)); *see also Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL 4054095, at *3 (C.D. Cal. Aug. 10, 2010) (awarding more than $85 million in damages for violations of similar statute, the DMCA, on finding defendant provided its infringing products or services to at least 427,393 users based upon evidence showing this number of members under the "community" section of defendant's website).[1] At $1,000 for each of the 3,333 Device Codes, Plaintiffs are entitled to statutory damages of $3,333,000 against Defendants.

Plaintiffs' requested damages are reasonable and conservative for several reasons. *First*, the number of Device Codes attributed to Defendants is based on payments received through only one payment processor during a limited time period of approximately three months from February 2019 to May 2019. Defendants accepted payment for Device Codes using at least eight additional payment processors, as well as virtual currency such as Bitcoin and Ethereum. (McMonnies Decl. ¶¶ 9-10, Ex. 5; *see* Jaczewski Decl. ¶¶ 4-5, 8, Ex. 1; Arguello Decl. ¶¶ 4-9, Exs. 1-3.) Defendants also sold Device Codes both before and after this limited three-month period in 2019. According to Boommedia.org, Defendants were selling Device Codes as early as April 2017, and Defendants continued offering Device Codes for sale on their website through the time this lawsuit was filed in October 2019, approximately thirty months later. (McMonnies Decl. ¶ 11, Ex. 7; *see* Jaczewski Decl. ¶¶ 4-8, Ex. 1; Arguello Decl. ¶¶ 6-7, 9, Exs. 2-3.) The 3,333 Device Codes forming the basis of Plaintiffs' request for statutory damages – which are calculated from payments that Defendants

[1] By comparison, there were 23.8 million subscribers to the Boom Media YouTube channel at the time this case was filed. (McMonnies Decl. ¶ 12, Ex. 8.)

received through just one of their nine payment processors, during three of the thirty months that Defendants were selling Device Codes – is a conservative computation of the number of Device Codes distributed by Defendants.

*Second*, the $1,000 per violation requested is substantially less than the statutory maximum of $100,000 per violation, and even below the $10,000 statutory *minimum* for violations of section 605(e)(4). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II); *see also DISH Network L.L.C. v. Dillion*, No. 3:12-cv-00157-CAB-KSC, Dkt. 47 at 6 (S.D. Cal. Oct. 15, 2012) (awarding $100,000 per violation, for a total of $12 million); *DISH Network L.L.C. v. Whitcomb*, No. 3:11-cv-0333 W (RBB), Dkt. 17 at 5 (S.D. Cal. July 18, 2011) ($10,000 per violation, for a total award of $14.4 million) (attached to McMonnies declaration as Exhibits 17-18.)

Enhanced statutory damages, while not requested, are appropriately awarded in this action given the willfulness of Defendants' misconduct. For example, in a video posted to Boom Media's YouTube channel, Defendant John Henderson – when discussing the demise of Vader Streams[2] – informs customers of his belief that all remaining services will be shut down due to legal action and customers should not expect a refund for their Device Code purchase when that happens:

> Every single one of them eventually is going to go down. So you have two choices, you either take the risk to save a little money long term, or you don't. … [Y]ou could go to cable and get 10% of the content and pay four times the price … . You have to put it in perspective of what it is you're buying.

(*Id.* ¶ 13, Exs. 10-11 at 16:45 mark [emphasis added].)

On this point, Mr. Henderson is clear: "**You guys are buying pirated streams, this shit is not Hulu, it's not Netflix, it's pirated f**king streams. … [I]t's no different than buying**

[2]Vader Streams reportedly shut down following a copyright infringement action filed in Canada that resulted in a permanent injunction and $10 million judgment against the operators of the Vader Streams service. *See* https://www.alliance4creativity.com/news/ace-achieves-major-anti-piracy-victory-with-suspension-of-vader-streams/.

**f**king knockoff shoes. … It's black market shit … ."** (*Id.*, Ex. 11 at 11:03 mark; *see also* 46:18 mark [commenting "[y]ou might as well have bought this shit off a back alley when you're dealing with guys like me" and criticizing others for giving the false "impression that this shit is completely legit and like cable") (emphasis added).

Moreover, prior to filing this case, Plaintiffs informed Defendants that their Device Codes facilitated unauthorized access to DISH Programming, to which Mr. Henderson responded "f**k you, sue me" and threatened to destroy evidence of the Rebroadcasting Scheme to protect himself and Defendants' customers:

> I got hit with a f**king phone call from Dish Network. My stance is f**k you, sue me. You want to f**king take me down? You better bring me to court, because I'm not just f**king rolling over. I never will, and even if that day happens, I'm going to dump a f**king cup of water on my computer, and f**king take whatever you can find.

(*Id.*, Ex. 11 at 6:03 mark.) Afterwards, Defendants – being undeterred – continued to market and sell Device Codes that enabled their customers to receive DISH Programming without authorization from Plaintiffs. (*Id.* ¶ 11; Arguello Decl. ¶¶ 4-7, 9, Exs. 2-3.) Defendants willfully violated section 605 of the FCA, which would entitle Plaintiffs to enhanced damages had such relief been requested.

*<u>Finally</u>*, Plaintiffs are not requesting attorneys' fees or costs, which must be awarded to an aggrieved party that prevails on its claim under section 605(e)(4) such as Plaintiffs. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly, additional monetary relief is available to Plaintiffs but such relief is not being requested in the default judgment.

Awarding Plaintiffs $3,333,000 in statutory damages is reasonable in this case. If there is a dispute concerning Plaintiffs' calculation of the number of Device Codes sold, Plaintiffs should be granted leave to conduct discovery on the third-party payment processors and virtual currency services that Defendants used in connection with their sale of Device Codes to establish damages.

*See One Box TV*, No. 8:19-cv-2147-T-30SPF, Dkt. 17 (granting default judgment and awarding statutory damages of $3.8 million for violations of section 605(e)(4), calculated based on number of Device Codes reflected in payment processor records subpoenaed with leave of court, multiplied by $1,000 for each code) (attached to McMonnies declaration as Exhibit 16).

**C. Plaintiffs Should Be Awarded A Permanent Injunction Against Defendants.**

The Court may enter "final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [section 605](a)." 47 U.S.C. § 605(e)(3)(B)(i). Plaintiffs establish each of the requirements for granting a permanent injunction: "(1) … irreparable injury; (2) … remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) … considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) … the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**1. Plaintiffs Are Irreparably Harmed And Have No Adequate Remedy At Law.**

"Irreparable harm is defined as 'certain and imminent harm for which a monetary award does not adequately compensate.'" *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (quoting *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003)). "Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012). Plaintiffs are irreparably harmed by Defendants' violation of section 605 and have no adequate legal remedy for two reasons.

*First*, Plaintiffs lose revenues and market share to an extent that cannot be fully determined. (McMonnies Decl. ¶ 15.) Defendants assist customers in receiving DISH Programming without purchasing the requisite subscription and corresponding receiving equipment from Plaintiffs. (*Id.*)

Quantifying Plaintiffs' loss that results from Defendants' misconduct is impractical as the number of Defendants' customers that received DISH Programming without authorization, and would have otherwise legitimately subscribed through DISH, is not easily determined. (*Id.*) Defendant John Henderson recognizes this difficulty in calculating Plaintiffs' lost revenues: **"You can say, 'Oh, all these people are f**king buying these pirated streams and whatever. They would've been buying Dish.' You don't f**king know that."** (*Id.* ¶ 13, Ex. 11 at 31:49 mark.)

Absent a permanent injunction, there is nothing to prevent Defendants from continuing to attract customers through the unauthorized retransmission of DISH Programming. Therefore, the loss resulting from Defendants' participation in the Rebroadcasting Scheme cannot be completely corrected by awarding Plaintiffs monetary damages. *See ivi*, 691 F.3d at 286 (finding irreparable harm based in part on difficulty in calculating damages for infringement); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[C]ourts have tended to issue injunctions … because 'to prove the loss of sales due to infringement is ... notoriously difficult.'") (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2d Cir.1971)); *see also DISH Network L.L.C. v. Dillion*, No. 12CV157 BTM (NLS), 2012 WL 368214, at *4 (S.D. Cal. Feb. 3, 2012) (finding irreparable harm in analogous case because "[i]t would be very difficult to quantify Plaintiffs' lost revenue").

*Second*, piracy harms Plaintiffs' business reputations and goodwill. (McMonnies Decl. ¶ 16.) Plaintiffs' reputations are built on and depend on delivering DISH Programming to authorized subscribers in a secure manner. (*Id.*) Defendants, by assisting their customers in receiving DISH Programming without authorization, harm Plaintiffs' reputations and interfere with the contractual and prospective business relationships of Plaintiffs, including relationships with channel providers that license their programming to DISH and customers for NagraStar's security technology. (*Id.*) Calculating Plaintiffs' reputational harm and lost sales caused by Defendants' piracy is inherently

difficult, if not impossible. (*Id.*) Defendants are free to continue with their infringing conduct that damages Plaintiffs' reputations and goodwill if not permanently enjoined.

For this additional reason, Plaintiffs are irreparably harmed and remedies available at law, such as monetary damages, are inadequate to completely compensate Plaintiffs for that injury. *See United States Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013) (affirming district court's finding of irreparable harm based on loss of control over reputation and goodwill); *Dillion*, 2012 WL 368214, at *4 (finding irreparable harm in part because "piracy harms the reputation of Plaintiffs" and "[i]t would be very difficult to quantify Plaintiffs' … reputational damage and make Plaintiffs whole").

**2. The Balance Of Hardships And Public Interest Favor An Injunction.**

Plaintiffs will be irreparably harmed absent an injunction for the reasons stated above. In contrast, an injunction will only cause Defendants to cease profiting from their participation in the Rebroadcasting Scheme through their sale of Device Codes, which should not be given any weight in an equitable balancing of harms. *ivi*, 691 F.3d at 287 (affirming district court's finding that "an infringer of copyright cannot complain about the loss of ability to offer its infringing product" and "cannot be legally harmed by the fact that it cannot continue streaming plaintiffs' programming, even if it puts [the infringer] out of business"); *see also DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601-02 (W.D.N.Y. 2011) ("The only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity, so the balance clearly weighs in Plaintiffs' favor."). Thus, the balance of equities tips decidedly in favor of granting the injunctive relief requested by Plaintiffs.

Likewise, "[t]he public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law." *DelVecchio*, 831 F. Supp. 2d at 602; *see Dillion*, 2012 WL 368214,

at *5 ("[T]he public has a strong interest in the enforcement of anti-piracy legislation."); *see also ivi*, 691 F.3d at 287-88 (finding that public interest was not disserved by enjoining the unauthorized streaming of television programming, as public could still access that programming through lawful services). The requirements for entering a permanent injunction are therefore satisfied.

## III. CONCLUSION

The Court should grant Plaintiffs' motion for default judgment and order as follows:

1. Defendants are liable on Counts I and II of Plaintiffs' complaint alleging violations of 47 U.S.C. §§ 605(a) and 605(e)(4);

2. Plaintiffs are awarded $3,333,000 in statutory damages against Defendants, jointly and severally, for Defendants' violations of section 605(e)(4);

3. Defendants' violations of section 605(a) and section 605(e)(4) warrant a permanent injunction barring Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with any of them that receives actual notice of the order, from:

a. Conducting the Rebroadcasting Scheme, or otherwise receiving or assisting others in receiving DISH's satellite communications or the television programming that comprises such communications without authorization from DISH; and

b. Selling or distributing Device Codes, or any other device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications or the television programming that comprises such communications without authorization from DISH.

Plaintiffs' requested damages and permanent injunction are justified for the reasons stated above, and do not go beyond the relief requested in Plaintiffs' complaint. (*See supra* Parts II.B.C.; Compl. Prayer for Relief §§ A, F.)

Dated: April 22, 2020 Respectfully submitted,

s/ Timothy M. Frank
**HAGAN NOLL & BOYLE, LLC**
Timothy M. Frank (*pro hac vice*)
Texas Bar #24050624
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
timothy.frank@hnbllc.com

**COUGHLIN & GERHART, LLP**
Robert R. Jones (Attorney Bar No. 301236)
99 Corporate Drive
Binghamton, NY 13904
Telephone: (607) 723-9511
Facsimile: (607) 723-1530
rjones@cglawoffices.com

Attorneys for Plaintiffs DISH Network L.L.C. and NagraStar LLC